553 A.2d 1056

Carolyn A. Wright, Petitioner *v.* Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Graterford, Respondent.

Carolyn S. Gibson, Petitioner *v.* Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Graterford, Respondent.

Submitted on briefs September 15, 1988, to Judges PALLADINO and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Gary Gordon, Kirschner, Walters and Willig,* for petitioners.

*David B. Farney,* Assistant Counsel, for respondent.

OPINION BY JUDGE SMITH, February 15, 1989:

This is a consolidated appeal by Carolyn A. Wright and Carolyn S. Gibson (Petitioners) from a decision of the State Civil Service Commission (Commission) upholding Petitioners' furloughs from their infirmary positions as licensed practical nurses (LPNs), regular status, with the Department of Corrections (Department) at the State Correctional Institution at Graterford (SCI-Graterford). Issues presented on appeal pertain to whether an agency can create a valid "lack of work" furlough by contracting out services, previously performed by furloughed employees in order to enhance operational efficiency and secure cost-savings under the Civil Service Act (Act).[1] The decision of the Commission is affirmed.

In 1980, the Department entered into a stipulation with the Imprisoned Citizens Union to dismiss outstanding allegations of contempt against the Department. The stipulation modified a 1978 consent decree and provided that within two years the Department must have a registered nurse on duty twenty-four hours a day in all correctional institution infirmaries. Findings of Fact No. 4. SCI-Graterford subsequently entered into a contract with a temporary employment agency to provide additional nurses on an as-needed basis to comply with the stipulation. As this proved to be inadequate, SCI-Graterford entered into a second contract with another

---

[1] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§741.1—741.1005.

temporary employment agency to provide similar services. However, this arrangement also proved to be unsatisfactory and the Department decided to consider a private health care service. Prior to releasing a request for bid proposals, the Department met several times with the various unions representing employees to discuss alternatives so as to improve health care services being provided. The Department once again met with the unions before deciding to enter into a contract with Correctional Medical Services, Inc. (CMS); however, no alternative suggestions were provided by the unions. N.T., pp. 45-46. The Department then entered into the CMS contract to provide comprehensive medical services to the inmate population at SCI-Graterford effective August 1, 1986. Findings of Fact Nos. 6, 9. Petitioners were notified on July 2, 1986 that they were being furloughed for lack of work since their positions were being abolished as a result of the contract with CMS. Petitioners appealed to the Commission, which sustained their furloughs, whereupon this appeal ensued.[2]

Section 3(s) of the Act, 71 P.S. §741.3(s), defines a furlough as termination of employment based upon lack of work or funds. Petitioners argue that the Commission legally erred in determining that lack of work existed because the Department entered into an independent contract for services which constituted insufficient evidence to establish a lack of work. Petitioners contend that absent an actual lack of work to be performed, a "lack of work" furlough cannot be sustained simply because it promotes operational efficiency. Petitioners further con-

---

[2] This Court's scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether substantial evidence supported the Commission's findings. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); *Ettinger v. Pennsylvania State Civil Service Commission*, 114 Pa. Commonwealth Ct. 594, 539 A.2d 67 (1988).

tend that the Department misconstrued a line of cases where an agency has been permitted to furlough employees due to reorganizational efforts, citing *Department of State v. Stecher*, 506 Pa. 203, 484 A.2d 755 (1984); *Vovakes v. Department of Transportation*, 71 Pa. Commonwealth Ct. 3, 453 A.2d 1072 (1982); and *Department of Public Welfare v. Magrath*, 14 Pa. Commonwealth Ct. 257, 321 A.2d 403 (1974). It is Petitioners' position that these cases permit reorganization only if there are too many employees performing too little work or two employees are duplicating each other's work.

In *Dougherty v. Department of Health*, 113 Pa. Commonwealth Ct. 620, 538 A.2d 91 (1988), however, this Court addressed issues similar to those advanced here and upheld the furloughs of six technicians whose employment was terminated for lack of work when the Department of Health contracted with a private firm to administer services previously performed by the furloughed technicians. Costs disproportionate to the number of persons the Department could serve triggered the contract. This Court, citing *Magrath*, stated that the relevant inquiry was whether there was a valid lack of work within the Department and more importantly, that contracting out of services can create a valid lack of work. Drawing upon the rationales of *Stecher* and *Vovakes*, it was noted that a reorganization can be a valid basis for implementing a furlough. Further, *Dougherty* held that when furlough of a regular status employee occurs, the burden is upon the appointing authority to demonstrate a lack of work or lack of funds.

Thus, Petitioners' contention that *Stecher*, *Vovakes* and *Magrath* are only applicable to situations where there is too little work or duplication of work is meritless because here there is too much work and too few employees. It is up to the agency and not to the Commission or

the Courts to determine what would best promote efficiency within the agency. *Magrath.* In the exercise of its managerial discretion, the Department can furlough an employee for lack of work when the work that the employee performed can be more efficiently performed by someone else. *See Stecher.* Although there is no lack of work here for the licensed practical nurses, it is management's prerogative to make operations more efficient and engaging another person or firm to do the work does not subvert civil service requirements. *Magrath.* Accordingly, the Commission correctly ruled that lack of work for Petitioners was established as a result of the Department's contract with CMS.

Petitioners contend, however, that when employees are furloughed from a civil service position, the Department has the burden of going forward with proof to establish a prima facie case justifying the furlough. *See Stecher.* In order to meet its burden, the Department must demonstrate that the employees' positions were eliminated; reorganizational streamlining occurred; and management in good faith believed that work could be accomplished more efficiently. *Dougherty.* There is no question that petitioners' positions were eliminated. Evidence of record also clearly shows that reorganizational streamlining occurred and management in good faith believed that work could be accomplished more efficiently by entering into a contract with CMS.

The record discloses that SCI-Graterford's medical department experienced substantial difficulty in recruiting and retaining nurses due to non-competitive salaries, the unattractive as well as high risk work environment of a correctional institution, and understaffing that resulted in a lack of supervision for the nursing staff. N.T., pp. 206-208, 223. Unsuccessful attempts were made by the Department to rectify this situation by contracting with

temporary employment agencies. N.T., pp. 21-25. Testimony further demonstrates that the health care system at SCI-Graterford was inefficient and fragmented due to twenty-four separate contracts with health care providers. By contracting with CMS, the Department unified all medical services which resulted in a savings of approximately $400,000.00. N.T., pp. 40-42. The record therefore shows that the Department acted in good faith and has undertaken substantial streamlining since entering into the contract with CMS.

Petitioners nonetheless assert that the Department's actions were in contravention of this Court's decisions in *Office of Medical Assistance v. Gelbaugh*, 96 Pa. Commonwealth Ct. 229, 506 A.2d 1017 (1986) and *Department of Education v. Conmy*, 90 Pa. Commonwealth Ct. 359, 495 A.2d 976 (1985) where furloughs were held to be unlawful. However, Petitioners' reliance thereon is misplaced. *Gelbaugh* involved an employee's involuntary demotion despite no lack of work and a finding that the Office of Medical Assistance failed to demonstrate improvement in efficiency as a result of the demotion. *Conmy* is likewise inapposite since the Department of Education was unable to offer any evidence that it saved money by furloughing an employee and replacing him with someone who performed essentially the same duties as the furloughed employees.

Petitioners' final argument assumes that the Department was permitted to enter into an independent contract for services but asserts that the Department should have first considered various other alternatives, including *inter alia*, higher salaries for the nursing staff as well as improvements in supervision and working conditions. *Stecher*, however, held that it is for the agency to make managerial decisions as to what best promotes efficiency within the agency. Moreover, the Department sought

alternative suggestions from Petitioners' union but received none.

Substantial evidence of record therefore supports the Commission's decision. The decision of the Commission is therefore affirmed.

### ORDER

AND NOW, this 15th day of February, 1989, the decision of the State Civil Service Commission is affirmed.

Judge MACPHAIL did not participate in the decision in this case.